# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

RANDALL BROOKS EPTING, III,

       Plaintiff,

vs.

NANCY A. BERRYHILL,

Acting Commissioner of Social Security,

       Defendant.

No. 16-CV-03118-LTS

**REPORT AND RECOMMENDATION**

---

Claimant Randall Brooks Epting, III (claimant) seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant has also filed a Title XVI application for supplemental security income, which was also denied. Claimant contends that the Administrative Law Judge (ALJ) erred in determining he was not disabled.

For the reasons that follow, I recommend the District Court **affirm** the Commissioner's decision.

## I. BACKGROUND

Claimant was born in 1986 and was 29 years old at the time of the ALJ's decision to deny benefits. Claimant completed high school and was in special education classes due to learning disabilities. (AR 47).[1] Claimant filed his application for Social Security Disability Insurance and Supplemental Security Income benefits on October 4, 2013.

---

[1] AR refers to the Administrative Record.

(AR 206-219).  Claimant asserted that his disability began November 2, 2012, at age 26, for impairments that include marked obesity; mood disorder NOS; major depressive disorder, recurrent; generalized anxiety disorder; panic disorder without agoraphobia; bipolar disorder; Cluster B personality traits; schizoid personality disorder; history of ADHD, combined type.  (AR 26).  The Social Security Administration denied the claimant's application initially and upon reconsideration.  (AR 144-147, 160-163). Claimant timely filed a Request for Hearing, and a video hearing was held on June 16, 2015, at Mason City, Iowa, before ALJ John E. Sandbothe.  (AR. 23, 41-80).

The ALJ determined that claimant was able to perform past relevant work as a farm worker.  (AR 35).  The ALJ further determined that there was other work the claimant could perform, such as folder and marker.  (AR 29)  As a result, the ALJ determined claimant was not disabled and was not entitled to benefits.

Claimant appeals the ALJ's decision claiming the ALJ improperly rejected claimant's subjective allegations and failed to give appropriate weight to the opinions of claimant's providers. (Doc. 13).  Claimant timely requested review of the ALJ's decision by the Appeals Council.  The Appeals Council denied review on May 31, 2016.  (AR 1-6).  The ALJ's decision, thus, became the final decision of the Commissioner.  20 C.F.R. § 404.981.  On August 3, 2016, claimant filed a complaint in this court.  (Doc. 3).

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists

. . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If claimant is engaged in substantial gainful activity, then claimant is not disabled. 20 C.F.R. § 416.920(a)(4). "Substantial" work activity involves significant mental or physical activities. 20 C.F.R. § 416.974(a). "Gainful" activity is work done for pay or profit, even if claimant does not ultimately receive pay or profit. 20 C.F.R. § 416.920(b).

Second, if claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of claimant's physical and medical impairments. If the impairments are not severe, then claimant is not disabled. 20 C.F.R. § 416.920(a)(4). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. § 416.920(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.945(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual

work situations; and (6) [d]ealing with changes in a routine work setting." *(Id.)*. §
416.945; *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if claimant has a severe impairment, then the Commissioner will determine
the medical severity of the impairment. If the impairment meets or equals one of the
presumptively disabling impairments listed in the regulations, then claimant is considered
disabled regardless of age, education, and work experience. 20 C.F.R. §§
416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir.
1998).

Fourth, if claimant's impairment is severe, but it does not meet or equal one of
the presumptively disabling impairments, then the Commissioner will assess claimant's
residual functional capacity (RFC) and the demands of his/her past relevant work. If
claimant can still do his/her past relevant work, then he/she is considered not disabled.
20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work claimant
has done within the past 15 years of his/her application that was substantial gainful
activity and lasted long enough for claimant to learn how to do it. 20 C.F.R. §
416.960(b)(1). "RFC is a medical question defined wholly in terms of claimant's
physical ability to perform exertional tasks or, in other words, what claimant can still do
despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646
(8th Cir. 2003) (internal quotation marks and citations omitted); *see* 20 C.F.R. §
416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R.
§ 416.945(a)(3). Claimant is responsible for providing the evidence the Commissioner
will use to determine the RFC. *(Id.)*. If a claimant retains enough RFC to perform past
relevant work, then claimant is not disabled. *(Id.)*. § 416.920(a)(4)(iv).

Fifth, if claimant's RFC, as determined in Step Four, will not allow claimant to
perform past relevant work, then the burden shifts to the Commissioner to show there is
other work claimant can do, given claimant's RFC, age, education, and work experience.

*See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If claimant can make the adjustment, then the Commissioner will find claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 416.945(a)(3). The burden of persuasion to prove disability remains on claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of claimant's limitations without the substance use. *(Id.)*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and claimant is not disabled. 20 C.F.R. § 416.935.

### III.   THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in his written decision. (AR 11-32).

At Step 1, the ALJ found claimant had not engaged in substantial gainful activity since November 2, 2012, the alleged onset date. (AR 25). Since May 2013, claimant stated a desire to work but cited lack of transportation as a barrier. (AR 26). Claimant testified that he had returned to work for six months in 2015, which was after the alleged onset date of disability. *(Id.)*. Claimant worked as a night watchman, which duties entailed watching a gate, monitoring truckers and feed trucks, directing trucks where to

park, and vermin control. (AR 26). Claimant resigned because of difficulty interacting with and anger towards coworkers. (*Id.*).

At Step 2, the ALJ determined claimant had the following severe impairments: morbid obesity, mood disorder, NOS, major depressive disorder, recurrent, general anxiety disorder, panic disorder without agoraphobia, bipolar disorder, Cluster B personality traits, schizoid personality disorder, and history of attention deficit hyperactivity disorder (ADHD), combined type. (*Id.*). The ALJ found claimant also had the following nonsevere impairments: GERD, diarrhea, and vomiting. (*Id.*). The ALJ found these nonsevere impairments were possibly associated with emotional state rather than medical issues. (*Id.*).

At Step 3, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *(AR 27)*. The ALJ found claimant had the following "paragraph B" criteria limitations due to his psychiatric symptoms: moderate restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with maintaining concentration, persistence of pace and did not have greater than two episodes of decompensation, within the definition of the regulations. (*Id.*). The ALJ determined the psychiatric review assessments supported no more than mild to moderate limitations in the "paragraph B" criteria and gave significant probative weight to the doctor's opinions. (*Id.*). The ALJ did not find any "paragraph C" criteria. (*Id.*).

At Step 4, the ALJ determined claimant's residual functional capacity by considering the entire record. In ascertaining whether claimant could return to his past work or any other work, the ALJ determined claimant's residual functional capacity allowed him to perform a full range of work at all exertional levels as defined in 20 CFR 404.1567(b) and 416.967(b) with following nonexertional limitations: only occasional

climbing, stooping, kneeling, crouching and crawling; simple, routine repetitive work; no contact with the public; no specific production rate requirements. (AR. 27-28). With this residual functional capacity assessment, the ALJ determined claimant was able to perform his past relevant work as a farm laborer. (AR 35). A vocational expert testified that claimant also could perform other work as folder and marker. (AR 74). Accordingly, the ALJ determined alternatively that at Step 4 there were other jobs in the national economy that claimant could perform with his residual functional capacity assessment. As a result, the ALJ determined the claimant was not disabled and not entitled to benefits. (AR 30).

In reaching this decision, the ALJ considered all symptoms and the extent to which they corroborated the objective medical evidence and other evidence based on requirements of 20 CFR 416.929 (including *Polaski v. Heckler*, 739 F. 2d 1320 (8th Cir. 1984) and SSRs 96-4p and 96-7p. (AR 18). Additionally, the ALJ also considered all symptoms as to the extent that they limited claimant's functioning. (*Id.*). The ALJ assigned weight to the various available opinions depending on whether the opinions were based on objective findings or claimant's subjective complaints and whether the opinions were consistent with the medical records. (AR 25-35). The ALJ determined that claimant's credibility was weakened by evidence of activity that was inconsistent with the severity of symptoms claimed by claimant. (AR 33).

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

A Court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..").  "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept

it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547

F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (Internal citation omitted)).

## V. *MEDICAL RECORDS REVIEW*

Claimant has been treated in the following facilities: Spencer Municipal Hospital, Mental Health Center of Northern Iowa, Accelerated Rehab, Mason City Clinic, Well Source, Kossuth Regional Health Center, Mason City Psychiatry, Behavioral Health, and Sanford Clinic. Claimant submitted Medical Source statements from the following providers: Dr. Mark Lassise, Tom Lang, LISW, and Abbe White, ARNP. Carroll Roland, Ph.D., also performed a consultative examination.

Claimant was treated in Spencer Municipal Hospital from November 1, 2012, to November 5, 2012. The discharge diagnoses were mood disorder, ADHD, Cluster b personality traits, GERD, and colitis. Claimant was admitted November 1, 2012, with homicidal ideation and threats against his father. On admission, claimant was agitated and irritable but had normal intellectual function and memory. (AR 327). At that time, claimant had been seeing a psychiatrist for two years and was taking psychiatric medication. (AR 328).

Claimant was evaluated by the Mental Health Clinic of North Iowa on September 28, 2012, with complaints of severe panic attacks. Claimant communicated without difficulty and had normal thought process, memory and concentration. Claimant was evaluated again on October 24, 2012, November 19 and 27, 2012, December 6, 2012,

and January 3 and 23, 2013, complaining of continued panic attacks and general anxiety; his medication was adjusted and monitored. (AR 368-378). Claimant discussed with his therapist that he sought disability payments through his employer and preferred to stay in the basement of his parent's house and not leave the house. Claimant's medication regimen was modified. (AR 354).

Claimant was reevaluated by the Mental Health Clinic of North Iowa on December 19, 2012, when he noted increasing agoraphobia and anxiety. His mood, speech, orientation, and concentration were normal. On February 7, March 7, and March 20, 2013, claimant was seen and his anger, avoidance, and anxiety issues were discussed. On April 4, 2013, the relationship between claimant's mental health issues and gastrointestinal issues were discussed, and claimant noted that he was taking more Clonazepam than prescribed and that made him feel symptom-free. (AR 362). Claimant's outpatient therapy and medication monitoring continued on April 25, 2013, and on May 22 and 30, 2013. (AR 378-84). On September 20, 2013, claimant was improving and applying for jobs. (AR 385). On November 18, 2013, and December 3, 2013, claimant continued treatment for agoraphobia, panic attacks, anxiety, avoidance, and anger. (AR 390).

A summary of claimant's mental health treatment was sent to MetLife Disability from the Mental Health Center of North Iowa on February 13, 2013. The opinions stated by Tom Lang, LISW, were that claimant had psychiatric instability, symptoms were difficult to treat, and did not respond to medication. Additionally, Mr. Lang opined that claimant's symptoms prevented any activity outside of the home. (AR 440). Mr. Lang completed a Treating Source Statement on June 15, 2015, where he opined that claimant's symptoms had not improved and emphasized claimant's difficulties interacting with others. (AR 483-4).

Claimant was seen by psychiatrist Dr. Mark Lassise on April 23, 2014, May 21,

2014, June 17, 2014, September 3, 2014, December 2, 2014, and February 19, 2015, with symptoms of irritability and mood swings. Claimant was diagnosed with bipolar disorder, ADHD, and mixed personality disorder. Claimant was treated with medications and the regimen was modified multiple times. (AR 442-60). Dr. Lassise filled out a Medical Statement of Ability to do work related activities (Mental) on June 15, 2015, where he indicated claimant's ability to function in a work environment was globally poor. (AR 465).

Claimant was sent by State of Iowa Disability determination services to Accelerated Rehabilitation Services on January 14, 2014, for a Comprehensive Physical Therapy evaluation for chief compliant of bilateral knee pain. (AR 398). Examination showed mild weakness of the left leg but claimant was able to ambulate but with abnormal gait. (*Id.*).

Claimant was evaluated at Wellsource for continued anxiety and irritability on December 27, 2013, January 28, 2014, February 27, 2014, and March 13, 2014. Claimant was revaluated on April 30, 2015; he had attempted employment at his father's place of business, but that was short-lived. (AR 413).

Claimant was treated at Kossuth Regional Health Center where he was seen by Dr. Brent Owen. On March 8, 2013, claimant had a follow-up appointment with Dr. Owen for abdominal pain and he was referred to Dr. Thoreson, gastroenterology. (AR 438). On May 27, 2014, Dr. Owen wrote that the claimant related the abdominal issues to his stress and anxiety. Dr. Owen evaluated claimant on June 25, 2014, for a wellness physical. Dr. Owen noted that claimant did not have any health concerns, and that his gastrointestinal and mental health issues were well controlled. (AR 436-7).

Claimant was evaluated by Dr. Thoreson on May 28, 2015, where mental issues and gastrointestinal issues were discussed. (AR 404-6).

Mary Beth Hanson, LISW, evaluated claimant at request of claimant's counsel.

Claimant told Ms. Hanson that he wanted to go back to work; however, the issues that posed difficulty were waking up on time, following directions, and interacting with other people. (AR 462). Ms. Hanson did not have enough information to complete the Medical Statement of Ability to Work.

Carroll Roland, Ph.D. completed a Consultive Psychological Evaluation on July 18, 2015. Dr. Roland concluded that claimant had a diagnosis of Major Depressive Disorder, recurrent with mild intensity, ADHD, panic disorder without agoraphobia, Schizoid Personality Disorder. Claimant had normal intellectual functioning. (AR 487-99).

On October 29, 2013, non-treating, state agency expert Scott Shafer, Ph.D. reviewed client's records and completed a mental residual functional capacity assessment (AR 86-90). Dr. Shafer concluded that claimant had moderate limitations in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday/workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (AR 88). Dr. Shafer further opined that claimant had moderate limitations in social functioning and the ability to respond appropriately to changes in the work setting. (AR 98-99). Otherwise, Dr. Shafer found claimant was not significantly limited in the remaining categories of mental functioning. (AR 97-99). Dr. Shafer concluded that claimant's attention, concentration, and pace were adequate for routine tasks not requiring sustained attention. (AR 88). In addition, Dr. Shafer found claimant could interact appropriately with the public, coworkers, and supervisors on at least a limited, superficial level and adjust to changes in the workplace with supervision. (AR 88-90).

On January 13, 2014, state agency medical expert, Russell Lark, Ph.D., also reviewed the record evidence and affirmed Dr. Shafer's opinion. (AR 112-114). The ALJ considered the state agency opinions and provided significant weight to the opinions. Ultimately, the ALJ found the opinions were consistent with the medical records as a whole, including claimant's own subjective reports. (AR 35).

## VI. DISCUSSION

Claimant argues the ALJ's residual functional capacity assessment was flawed for three reasons:

1. The ALJ's decision was not supported by substantial evidence in the record as a whole. (Doc. 15, at 3-7).

2. The ALJ improperly evaluated claimant's subjective impairments. (Doc. 14, at 5).

3. The ALJ failed to give proper weight to the opinions of claimant's treating physicians. (Doc. 14, at 7).

I will address these arguments separately below.

### A. *Whether the ALJ's decision was supported by substantial medical evidence from a treating or examining source.*

Claimant argues that the ALJ gave little weight to the opinions of Dr. Lassise, Abbie White, ARNP, and Tom Lang, LISW, and gave little weight to the part of Dr. Roland's opinion that stated claimant had marked impairments in interactions with co-workers, supervisors, and the public. (Doc. 14, at 7). Claimant argues the ALJ did not fully and fairly developing the record by selecting the parts of expert opinions that are not consistent with the record as a whole. (Doc. 14, at 3-7).

I find the ALJ properly acted within his zone of choice in weighing the work-related limitations opined by treating physician Dr. Lassise and consultative psychologist, Dr. Roland. The ALJ considered all symptoms as far as they were consistent with the

objective findings in the medical records and assigned weight to the medical opinions to the degree they were consistent with the record as a whole. (AR 28). The ALJ conducted an adequate analysis in the area of his residual functional capacity assessment, even though his conclusion did not conform to that of Dr. Lassise. (AR 465). The ALJ conducted an adequate analysis in the areas of his residual functional capacity assessment that did conform to the records as a whole. (AR 29). The ALJ concluded from the medical records that much of claimant's symptoms were related to his relationship with his parents. (AR 28-31). The ALJ noted that contrary to conclusions of treating providers, the records indicated that claimant expressed benefit from psychiatric medication and treatments. (AR 30). The ALJ emphasized that the records indicated few anger outburst and panic attacks. (*Id.*). The ALJ also noted claimant's ability to maintain emotional control when interacting with treating and examining sources. (AR 35).

I find the ALJ's residual functional capacity assessment is supported by the required substantial medical evidence, and the ALJ gave appropriate weight to the medical opinions and reconciliation of those opinions with the medical records. *See Fentress v. Berryhill*, 854 F.3d 1016, 1017 (8th Cir. 2017) (holding that a court will uphold a decision to deny benefits if that decision is supported by substantial evidence in the record as a whole). In my own review of the administrative and medical records, I find support for the ALJ's conclusion that claimant's interactions with both Dr. Lassise and Dr. Roland are inconsistent with the other records and level of claimant's functioning. Additionally, I find that the records as a whole do not describe physical or mental limitations that would support a finding of disability as defined in 42 U.S.C. § 423(d)(2)(A). *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (holding ALJ's adverse credibility determination for was supported by substantial evidence, including the ALJ's finding that claimant's alleged limitations were inconsistent with claimant's daily

activities).

Ultimately, it is not for this Court to re-weigh the medical evidence or resolve conflicts between medical professionals. So long as the ALJ's analysis is reasonable, this Court cannot reverse the Commissioner's decision. *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) ("We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." (internal citation omitted)). I find there was substantial evidence in the record as a whole to support the ALJ's residual functional capacity assessment.

**B.** *The ALJ's assessment of claimant's subjective complaints.*

Claimant argues that ALJ incorrectly evaluated claimant's subjective complaints based on *Polaski* criteria. (Doc. 14, at 11). In evaluating a claimant's credibility, an ALJ must consider the entire record including the medical records, statements by claimant and third parties, and factors such as: (1) claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In arriving at a credibility determination, an ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Brown v. Astrue*, 4:08-CV-483 CAS, 2009 WL 88049, at *8 (E.D. Mo. Jan. 12, 2009) (quoting *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence." *Id.* (citing *Masterson*, 363 F.3d at 738; *Cline*, 939 F.2d at 565). In the end, however, "[t]he determination of a claimant's credibility is for the Commissioner, and not the Court, to

make." *Id*. (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

The ALJ concluded, based on the records as a whole, that the intensity of symptoms that claimant alleged was not credible. The frequency of episodes of panic attacks associated with diarrhea and vomiting appeared less frequent in the records than that indicated by claimant. (AR 34). The records indicate that depression was stable on medication and at all times mental status examinations were normal. Claimant was able to participate in activities of daily living when in his best interest to do so. Claimant's anger was largely triggered by his parents, and the ALJ further emphasized that claimant did work for one year at Casey's General Store and the work ended when the family moved. (AR 34). The ALJ held claimant's mother's testimony had little weight as she is not a medical professional, and her testimony was not consistent with claimant's reported activities.

The ALJ did not discount claimant's subjective complaints solely because they were not supported by objective medical evidence. Consistent with *Polaski*, the ALJ weighed the record and I find that the ALJ adequately detailed inconsistencies found in the record. The ALJ identified instances where claimant's testimony contradicted the record. The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. *Pearsall*, 274 F.3d at 1218. Accordingly, a court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Here, the ALJ appropriately considered the record in determining the credibility of claimant and accordingly the weight assigned to opinions that were largely based on subjective complaints and functional testing based on claimant's effort.

The ALJ properly evaluated claimant's credibility in light of the *Polaski* factors

and determined that claimant had limitations, but not to the degree of severity claims. (AR 23-25). The ALJ noted that claimant was able to participate in lawn care, laundry, grocery shopping, meal preparation, washing dishes, reading, watching TV, playing video games, self-care and driving. Additionally claimant was able to attend and participate in all appointments with treating and examining sources. (AR 42). Although Eighth Circuit Court of Appeals' decisions provide "mixed signals" regarding how ALJs are to consider a claimant's daily activities in making credibility determinations, the case law still provides that ALJs may consider daily activities in assessing a claimant's credibility. *See, e.g., Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (permitting an ALJ to discount a fibromyalgia claimant's credibility in part based upon the claimant's daily activities, including the ability to cook, clean, drive, shop, and take care of personal grooming and hygiene). The ALJ also considered whether claimant's work history was consistent with his subjective complaints. Claimant worked four to five months as a night watchman subsequent to the alleged disability onset date. (AR 26, 60). The ALJ even considered claimant's work after the alleged onset date as an unsuccessful work attempt. (AR 26). Moreover, the ALJ went on to note that even after being off work for two years, claimant attempted to return to work with his father. (AR 30).

As a general matter, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will defer to his decision. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams*, 393 F.3d at 801). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). It is not this Court's position to re-evaluate and re-weigh the same evidence. Nevertheless, in my own review of the records, I find support for the ALJ's conclusion that the documented examinations do not describe

consistent mental or physical findings that would support disability as defined in 42 U.S.C. § 423(d)(2)(A). *Igo*, 839 F.3d at 731 (holding ALJ's adverse credibility determination for claimant was supported by substantial evidence including ALJ's finding that claimant's alleged limitations were inconsistent with his daily activities). The ALJ was in a better position than the Court to assess claimant's credibility, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), and was not required to accept his subjective complaints.

I therefore conclude the ALJ did not err in finding that the alleged severity of the symptoms to which claimant testified were not supported by the record.

### C. *The ALJ's assignment of weight to claimant's treating physicians.*

The ALJ accorded some weight to Mary Beth Hansen, LISW to the extent that claimant noted positive response to treatment and improving function. However, a licensed social work therapist is not an acceptable medical source. Only acceptable medical sources may provide evidence to establish the existence of a medically determinable impairments (a medical opinion), and only an acceptable source can be considered a treating source. *Lacroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006); 20 C.F.R. §§ 404.1513(a)(1)-(5), 404.1527(a)(2), 416.1513(a)(1)-(5), 416.1527(a)(2). Therefore, opinions from other sources are not entitled to controlling weight. Social Security Ruling ("SSR") 06-3p.

The ALJ considered the opinion of Dr. Lassise, however those opinions were not supported by the treatment history given the stability of the mental status examinations. The ALJ concluded that Dr. Lassise did not support his conclusions with objective medical findings and were inconsistent with the record as a whole. (AR 34-35). The ALJ therefore assigned little weight to Dr. Lassise's opinions. (AR 34).

The ALJ used part of the opinion of Dr. Roland in that Dr. Roland opined that claimant would be capable of a range of unskilled activity and work. However, the ALJ

assigned less weight to the parts of Dr. Roland's testimony that involved emotional instability because this was largely triggered by claimant's parents. Accordingly greater weight was assigned to the opinions of the non-examining physicians and consultants as those opinions were consistent with the preponderance of the evidence. (AR 35).

The ALJ gave considerable weight to Dr. Roland's evaluation detailing claimant's functioning. The ALJ emphasized that Dr. Roland's records stated that claimant was able to drive and he had a driver's license, prepared meals, and carried out normal activities of daily living, although claimant spent most of his time watching TV. (AR 32). Dr. Roland concluded that claimant was able to understand, remember and carry out simple work-related tasks as well as make simple work related decisions without difficulty. The claimant's main difficulty was in interpersonal interactions. (AR 487-99).

The ALJ gave considerable weight to non-examining expert Scott Shafer Ph.D. who reviewed client's records and completed a mental residual functional capacity assessment. (AR 86-90). Dr. Shafer concluded that claimant's attention, concentration, and pace were adequate for routine tasks not requiring sustained attention. (AR 88). In addition, claimant could interact appropriately with the public, coworkers, and supervisors on at least a limited, superficial level and adjust to changes in the workplace with supervision. (AR 89). The opinions of non-examining state agency consulting physicians normally cannot constitute "substantial evidence" in support of an ALJ's decision when those opinions directly conflict with the opinions of treating or examining sources. *See*, *e.g.*, *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) ("The opinions of non-treating practitioners who have attempted to evaluate claimant without examination do not normally constitute substantial evidence on the record as a whole.") (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)); *Dixon v. Barnhart*, 324 F.3d 997, 1002-03 (8th Cir. 2003) (holding that "[g]iven the contradicting

recommendations in the record and the insufficiently developed record surrounding Dixon's cardiac problems, [the non-examining consulting physician's] opinion does not constitute substantial record evidence that Dixon can perform medium work.") (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). When, however, assessments of state agency medical consultants are consistent with other medical evidence in the record, these assessments can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08. Indeed, an ALJ may rely on a state agency consulting physician's opinion even when that opinion conflicts with the opinion of a treating physician. *See Ponder v. Colvin*, 770 F.3d 1190, 1194-95 (8th Cir. 2014) (concluding that three non-examining consulting physician's opinions trumped a treating physician's opinion). An ALJ may ultimately base an RFC assessment on medical evidence, even in the absence of any medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2013). It is the ALJ's duty to weigh the medical evidence. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotation marks and quotation omitted).

I find the ALJ properly acted within his zone of choice in weighing all available opinions. The ALJ relied on the statements of all recorded treating doctors and examiners, with differential weight assigned to each opinion in his residual functional capacity analysis. The ALJ conducted an adequate analysis in the areas of his residual functional capacity assessment that did conform to the records as a whole. (AR 35). Ultimately, it is not for this Court to re-weigh the medical evidence or resolve conflicts between medical professionals. So long as the ALJ's analysis is reasonable, this Court cannot reverse the Commissioner's decision. *See Haggard*, 175 F.3d at 594 (internal citation omitted) ("We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome."). I find there was substantial evidence in the record as a whole for the ALJ to act within

his zone of choice in assigning little weight to Dr. Lassise and partial weight to Dr. Roland. Therefore, I find the ALJ did not err here.

## VII. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the ALJ's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 3rd day of August, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa