# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| RANDALL BROOKS EPTING, III,<br><br>  Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>  Defendant. | No. 16-CV-3118-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge. Doc. No. 18. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying the applications by plaintiff Randall Brooks Epting, III, for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et. seq.* (Act).

Epting filed timely objections (Doc. No. 19) to the R&R on August 17, 2017. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006); see 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." Lewis v. Barnhart, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.

1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

3

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* The Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3D 803, 815 (8th Cir. 1994). As this court has previously stated, "[e]ven if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all . . . ." *Lynch v. Astrue*, 687 F. Supp. 2d 841 (2010) (citing *Coop. Fin. Assoc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996)). This court will provide de novo review of all issues that might be addressed by any objection, but will review for clear error matters to which no objection at all has been made. *Id.*

### III. THE R&R

Epting alleged disability beginning November 2, 2012, due to numerous conditions including marked obesity, mood disorder NOS, major depressive disorder recurrent, generalized anxiety disorder, panic disorder without agoraphobia, bipolar disorder, Cluster B personality traits, schizoid personality disorder and history of ADHD, combined type. AR 26. An Administrative Law Judge (ALJ) found Epting was able to perform past relevant work as a farm worker and, therefore, was not disabled. AR 35.[1]

---

[1] The R&R states that the ALJ found Epting could also perform other work such as folder and marker, citing AR 29, and that a vocational expert testified to the same, citing AR 74. Doc. No. 18 at 2, 7. In reviewing the ALJ's decision and the hearing transcript, however, I see no mention of Epting's ability to do any work other than his past relevant work.

Epting raises three issues in arguing that the ALJ erred: (1) the ALJ's opinion was not supported by substantial evidence on the record, (2) the ALJ improperly rejected Epting's subjective allegations and (3) the ALJ failed to give appropriate weight to the opinions of his treating physicians. Doc. No. 14; Doc. No. 18 at 13. Judge Williams addressed each argument separately.

With respect to whether the ALJ's decision was supported by substantial evidence, Judge Williams found that the ALJ properly considered all symptoms reflected in the medical records and assigned appropriate weight to the medical opinions to the extent they were consistent with the record as a whole. Doc. No. 18 at 13–14. Judge Williams stated:

> [T]he ALJ's residual functional capacity assessment is supported by the required substantial medical evidence, and the ALJ gave appropriate weight to the medical opinions and reconciliation of those opinions with the medical records. *See Fentress v. Berryhill*, 854 F.3d 1016, 1017 (8th Cir. 2017) (holding that a court will uphold a decision to deny benefits if that decision is supported by substantial evidence in the record as a whole). In my own review of the administrative and medical records, I find support for the ALJ's conclusion that claimant's interactions with both Dr. Lassise and Dr. Roland are inconsistent with the other records and level of claimant's functioning. Additionally, I find that the records as a whole do not describe physical or mental limitations that would support a finding of disability as defined in 42 U.S.C. § 423(d)(2)(A). *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (holding ALJ's adverse credibility determination for was supported by substantial evidence, including the ALJ's finding that claimant's alleged limitations were inconsistent with claimant's daily activities).

*Id*. at 14–15.

Regarding the ALJ's assessment of Epting's credibility and subjective complaints, Judge Williams found that the ALJ properly weighed the record and adequately detailed the inconsistencies between Epting's testimony and the medical reports. *Id*. at 16. Judge Williams noted that the ALJ considered Epting's work history, ability to attend appointments, complete household chores and engage in self-care. *Id*. at 17. He

ultimately found that the ALJ properly assessed Epting's credibility and, therefore, was not required to accept his subjective complaints. *Id*. at 18.

Finally, Judge Williams found that the ALJ properly acted "within his zone of choice" when weighing the available medical opinions. *Id*. at 20. The ALJ gave some weight to the opinion of Mary Beth Hansen, LISW, but did not give her opinion controlling weight because she was not an acceptable medical source. *Id*. at 18. The ALJ found that the opinion of Dr. Mark Lassise was not supported by Epting's treatment history or by the objective medical findings. *Id*. The ALJ gave some weight to Dr. Carroll Roland's opinion that Epting could perform a range of unskilled work and gave considerable weight to her evaluation of Epting's functioning, but gave less weight to the parts of the opinion regarding Epting's emotional instability because that instability was largely triggered by his parents. *Id.* at 18–19. The ALJ also gave greater weight to non-examining physicians' opinions because they were consistent with the preponderance of the evidence. *Id*. at 19. Judge Williams concluded that the ALJ's analysis was reasonable, stating:

> [t]he ALJ relied on the statements of all recorded treating doctors and examiners, with differential weight assigned to each opinion in his residual functional capacity analysis. The ALJ conducted an adequate analysis in the areas of his residual functional capacity assessment that did conform to the records as a whole.

*Id*. at 20.

Based on these conclusions, Judge Williams recommends that I affirm the ALJ's determination that Epting was not disabled. *Id*. at 21.

## IV. DISCUSSION

Epting objects to Judge Williams' findings that (1) the ALJ's credibility findings were supported by substantial evidence, (2) the ALJ assigned appropriate weight to the

opinions of Epting's treating sources and (3) the ALJ's decision was supported by substantial evidence in the record as a whole. I will review those issues de novo.

## A.   *The Credibility Findings*

Epting claims that he has great difficulty interacting appropriately with supervisors and co-workers. Doc. No. 19 at 2. Even though he has worked for short periods of time, his anxiety and confrontational behavior eventually reaches a point where he quits or is let go. *Id*. He claims he becomes physically sick from anxiety and in order to manage his behavior he has to isolate himself and so cannot function in a competitive work environment. *Id*. at 1–2. He argues that it was improper for the ALJ to consider his daily activities as inconsistent with disability. *Id*. at 3. He also argues that the ALJ improperly discounted his mother's, Angela Epting's, testimony and function report. *Id*.

A claimant's credibility is primarily for the ALJ to decide, but the decision must be based on substantial evidence. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). The ALJ must make "express credibility determinations" and articulate the inconsistencies in the record that caused him to reject the plaintiff's complaints. *Id.* When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence as well as the *Polaski* factors, which include "(i) [the] claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) dosage, effectiveness, and side effects of medication; and (v) functional restrictions." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (*citing Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ may not discount a claimant's allegations solely because medical evidence does not fully support them. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). However, the ALJ may discount the claimant's subjective complaints if there are inconsistencies in the record as a whole. *Guilliams*, 393 F.3d at 801. The court should defer to the ALJ's credibility finding if he explicitly discredits the claimant's testimony and gives good

reasons for doing so. *Buckner*, 646 F.3d at 558, *citing Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

The ALJ found that Epting's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. AR 33. He observed that Epting reported improvements with medication management as well as infrequent panic and anger outbursts. AR 34. Further, his mental status examinations remained stable throughout the treatment records, his depression was stable with medication, and he had engaged in daily living activities such as grocery shopping, meal preparation, laundry, washing dishes, self-care and driving. *Id.* The ALJ also noted that Epting worked successfully for one year at a Casey's General Store before he and his family moved. *Id.*

"If an ALJ discredits testimony and explicitly gives good reasons for doing so, [the court] is bound by that judgment unless it is not supported by substantial evidence on the record as a whole." *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). It is clear that the ALJ considered the *Polaski* factors, even if he did not specifically lay out those factors in his opinion. Contrary to Epting's argument, a claimant's daily activities are one of the factors the ALJ may properly consider when determining credibility. Inconsistencies between the claimant's subjective complaints and his daily living activities can diminish credibility. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).

It is evident that Epting suffers from some amount of anxiety. However, the ALJ gave specific reasons for discounting Epting's claims of severity that are supported by the record, such as the stable mental status examinations (AR 368, 371, 373, 375, 377, 381, 383, 391, 410, 408, 453), medication effectiveness (AR 113, 381, 383, 385, 453, 462, 490), ability to perform daily living activities (AR 89, 489, 494, 498 ) and his work history (AR 337, 343, 413, 420, 489). These inconsistencies are "good reasons" for discounting Epting's subjective complaints. Therefore, I defer to the ALJ's credibility determination.

With regard to Angela Epting's testimony, the ALJ must consider other information regarding a claimant's symptoms, including statements provided by third

parties. 20 C.F.R. § 404.1529(c)(3); *Buckner*, 646 F.3d at 559–560. Here, the ALJ specifically addressed Angela's statement and found it did not establish that Epting was disabled. AR 34. He stated that Angela was not medically trained, calling into question the accuracy of the testimony, and stated that the familial relationship made her an interested third party. AR 34. Further, like Epting's own statements, the ALJ found her testimony was not consistent with the preponderance of opinions and observations of medical doctors. AR. 34. Thus, the ALJ addressed the third-party evidence and articulated specific reasons for finding it not credible. The inconsistencies in the record diminishing Epting's credibility are the same inconsistencies that provide a basis for discounting Angela Epting's credibility. Therefore, I defer to the ALJ's credibility determination as to Angela Epting.

## B. *The Medical Opinions*

Epting argues that the ALJ improperly gave significant weight to the opinion of a non-examining state agency consultant, Scott Shafer, Ph.D. Doc. No. 19 at 3. He also argues that the ALJ improperly gave significant weight only to the portion of Dr. Roland's opinion that reported normal cognitive functioning while affording less weight to her finding of marked impairments in interacting with co-workers. *Id.* Epting further argues that the ALJ did not give enough weight to the opinions of treating mental health providers Abbie White, ARNP, Raymond Lang, LISW,[2] and Dr. Mark Lassise. *Id.* Epting argues that their reports are internally consistent and consistent with other treating sources. Doc. No. 19 at 4–5. He claims that the ALJ, by citing the treatment notes instead of the physicians' conclusions, improperly substituted his own opinion for the physicians' opinions. Doc. No 19 at 4. He also contends that the ALJ chose to address only the opinions that were not consistent with the record as a whole. Doc. No. 19 at 3.

---

[2] At various points in the ALJ's opinion, Epting's briefs and the R&R, Raymond Lang is also referred to as "Tom" Lang. In the medical records he appears as "Raymond" Lang.

9

### *1. Applicable Standards*

A treating physician's opinion is entitled to substantial weight, but the Commissioner may discount or disregard the opinion if other medical assessments are supported by more thorough or better evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). When medical evidence in the record as a whole contradicts the treating physician's opinion, that opinion is also afforded less deference. *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999). The opinion may be given limited weight if it is conclusory or inconsistent with the record. *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). A treating physician's statements may also be discounted when they are inconsistent with the overall assessment of that physician or opinions of other physicians. *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011). Further, the ALJ may discount the opinion if it is inconsistent with the physician's own clinical treatment notes. *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). The ALJ must give good reasons for the weight given to the opinion. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). A treating physician's claim that the claimant is disabled or unable to work "does not carry any special significance." *Davidson*, 578 F.3d at 842.

Opinions from non-examining sources are generally given less weight than those of non-examining sources. *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008). Non-examining source opinions do not normally constitute substantial evidence when they directly conflict with the opinions of treating or examining sources. *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). Sometimes, however, the opinion of a non-examining source may outweigh the opinion of a treating source when, for example, the non-examining source opinion is more consistent with the evidence as a whole. 20 C.F.R. § 404.1527(f)(1).

### 2. *Summary of the Medical Opinions*

**Dr. Carroll Roland.** The ALJ gave Dr. Roland's opinion regarding Epting's normal cognitive functioning significant weight and her opinion regarding his marked social limitations less weight due to documented functional periods of work. AR 35. He also gave the opinion less weight because of Dr. Roland's note that Epting's emotional issues were triggered by parental involvement. *Id.*

In a psychological evaluation Dr. Roland conducted on July 18, 2015, Epting reported to her that he could not cope with coworkers and his condition was getting worse. AR 487. Dr. Roland noted that Epting had worked for sixth months as a night time security guard but quit due to conflicts with supervisors. AR 489. He had also worked at an egg farm before quitting due to conflicts with coworkers and supervisors, but had successfully worked for one year at a Casey's General Store until his family moved. AR 489. She noted that during the examination he was cooperative, responsive and focused, but restless. AR 490, 491. She further stated that with medication, Epting's depression was in the mild range and he is most likely to be volatile and angry when his depression intensifies. AR 490. She stated that his judgment was intact and he understood basic societal mores. AR 491. She ultimately concluded that his ability to interact with the public, supervisors and co-workers was markedly impaired. AR 499.

**Abbie White, ARNP.** The ALJ gave little weight to White's opinion that Epting was not responding to treatments and that his condition had worsened. AR 34. The ALJ stated that White's opinion was "internally inconsistent with the stability of mental status examinations as well as the reported response to treatment interventions." *Id.* In February 2013, Abbie White and Raymond Lang stated in a letter to the Metropolitan Life Insurance Company (MetLife) that Epting's observable symptoms had worsened and that the severity of his impairments prevented any activity outside the home. AR 439–40.

White's treatment notes begin in October 2012. AR 368. She noted that Epting was pleasant and cooperative, with good eye contact, but became irritated with his

mother. AR 369. She noted that he had fair insight and concentration, and believed it would even improve more if his mother was absent. *Id.* These same mental status characteristics remained consistent throughout her treatment notes, spanning just over a year. AR 371, 373, 375, 377, 381, 383, 385, 391, 408, 410. In December 2012, White noted that Epting continued to vomit daily and remained home to avoid people. AR 373. In January 2013, he reported high levels of anxiety. AR 375. In the MetLife letter, White noted that Epting's symptoms had worsened and his anxiety dramatically impaired his daily functioning. AR 439. He had been unable to drive and remained isolated in his parents' home. *Id.* She reported that at the previous four appointments, various medications have been changed or adjusted and he was not effectively responding to treatment. AR 440. However, in May 2013, White's notes indicate that Epting had decreased anxiety and less frequent vomiting. AR 381. By July his anxiety improved and he was able to drive places. AR 383. He could apply for jobs without vomiting, even though his mother reported he became more anxious in social situations. AR 393. In February 2014, White's notes state that Epting was unable to keep a job because of an inability to be around people even though his panic attacks had lessened. AR 408.

**Raymond Lang, LISW.** The ALJ also gave little weight to Lang's opinion (signed with Abbie White) that Epting's dysfunctional behaviors did not improve during therapy and his symptoms had worsened. AR 34. However, the ALJ did give some weight to Lang's statement that Epting sustained functional periods, and gave some weight to Lang's finding as to "the commonalty of emotionally-driven behaviors when associated with parental involvement." *Id.* The ALJ gave the opinions only some weight based on a finding that they were internally inconsistent. *Id.*

Lang's treatment notes began in September 2012. AR 337-50. In those notes, he stated that Epting was focused and appropriate, with no indication of aggressive ideation towards others. AR 351, 352, 390. However, he also noted that Epting reported the medications have not helped with anxiety and he struggled with panic attacks and vomiting. AR 356, 361, 362, 430. When taking more than prescribed dosage, Epting

12

reported that he felt like his "old self." AR 362. Lang noted Epting's high irritability. AR 428, 429, 430.

In December 2013, Lang reported lessened panic attacks and that Epting was compliant with medications. AR 430. In April 2015, Lang noted that Epting was "comfortable" with a recent change to the position of groundskeeper at the factory his father managed and experienced lessened panic attacks. AR 413. In a letter to Epting's counsel dated July 15, 2015, Lang concluded that Epting had a history of functioning somewhat adequately for a limited time in a competitive employment environment but would then decline. AR 483. However, in the same letter he said that Epting's patterns of dysfunctional emotional behaviors had not improved since 2012. AR 484.

**Dr. Mark Lassise.** The ALJ gave Dr. Lassise's statement that Epting was poor at adjusting to work and social situations partial weight because it was "not fully supported by the treatment history given the stability of mental status examinations." AR 35. Dr. Lassise's treatment notes began in April 2014. AR 458. He noted some irritability and anxiety but stated that, overall, Epting was cooperative. AR 456, 444. In December 2014, he noted that Epting felt he was doing well on the present medication. AR 446. However, in his medical source statement, Dr. Lassise concluded that Epting had poor ability to make occupational and performance adjustments and had no ability to relate predictably in social situations. AR 466.

**Scott Shafer, Ph.D.** The ALJ gave significant weight to the state agency medical and psychological opinions because they were generally consistent with the "preponderance of the medical record," the physical and mental status examinations and the noted response to treatment. AR 35. Dr. Shafer completed a mental residual functional capacity assessment on Epting. AR 89, 100. He reviewed Epting's medical records and noted that Epting suffered from panic attacks resulting in vomiting in 2012. AR 89. He followed up with therapy and medication and in 2013 he reported the medication was effective and he was looking for work. AR 89. During a visit in 2013 he was pleasant and cooperative and was applying for jobs without vomiting. AR 89.

### 3. Analysis

It is the ALJ's duty to resolve conflicts between medical opinions and determine the weight given to each opinion. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 20020) The ALJ must evaluate the record as a whole, and a treating physician's ultimate opinion does not automatically control if inconsistent with the overall record. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). The ALJ did not completely disregard the treating physicians' opinion, but did give them less than substantial weight. There are enough inconsistencies in the record to support the weight the ALJ assigned to each opinion. Epting did present serious anxiety and panic attacks in 2012, particularly with the emergency admission to Spencer Hospital. AR 322–35, 356, 368, 371, 373. However, throughout 2013 there were multiple indications from the treating physicians' treatment notes that he felt better with medication and the instances of panic attacks, vomiting, and anxiety had decreased with that medication. AR 377, 381, 383, 385, 393, 430, 490.

Epting started to drive again and expressed a desire to return to work and could apply for jobs without vomiting. AR 383, 393. Further, the mental status examinations throughout Epting's treatment history generally noted a cooperative demeanor with a good affect. AR 369, 371, 373, 375, 377, 381, 383, 385, 391, 408, 410. The documented instances of irritability came when his mother accompanied him to appointments and he discussed his father. AR 342, 344, 351, 354, 364, 369, 390. Abbie White indicated those instances would decrease if his mother was not present. AR 369. When Epting interacted with staff during appointments he exhibited appropriate behavior. AR 332, 369, 372, 374, 379, 381.

Based on the record before me, I find that no error in the ALJ's evaluation of the medical opinion evidence. The ALJ identified inconsistencies between the treating physicians' opinions and their clinical notes, as well as with other medical evidence in the record. AR 34-35. In light of those inconsistencies, and the ALJ's review of the record as a whole, the ALJ was entitled to give less than full weight to the opinions of

Epting's treating providers and significant weight to the non-treating source's opinion. I find no basis to disturb the ALJ's conclusions.

## C. *Substantial Evidence in the Record as a Whole*

Epting argues that the medical record makes clear that he cannot work in a competitive work environment and becomes physically sick from anxiety. Doc. No. 19 at 1. He claims Judge Williams did not properly apply the substantial evidence test because he did not account for evidence that detracted from the ALJ's decision. Doc. No. 19 at 2.

A court must affirm the Commissioner's decision when it is supported by substantial evidence in the record as a whole. *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015). When reviewing the ALJ's decision, the court must take into account evidence that both supports the decision and detracts from it. *Kluesner v. Astrue*, 607, F.3d 533, 536 (8th Cir. 2010). The substantial evidence standard allows for drawing two inconsistent conclusions. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The court may not reverse the ALJ's decision simply because it may have reached a different conclusion or because substantial evidence supports a contrary conclusion. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Haggard*, 175 F.3d at 594.

Here, as summarized above, there is evidence in the record that both detracts from and supports the ALJ's decision. However, having found no error in the ALJ's credibility determinations or the weight given the medical opinions, and in my review of the record I find that there is substantial evidence on the record as a whole to support the ALJ's decision. The Commissioner's decision cannot be reversed simply because the evidence might also support a contrary outcome. *Haggard*, 175 F.3d at 594. On balance, the record reasonably supports the ALJ's decision that Epting's limitations do not reach the level of disability within the meaning of the Act.

## V. CONCLUSIONS

For the reasons set forth herein:

1. Plaintiff's objections (Doc. No. 19) to the Report and Recommendation (Doc. No. 18) are **overruled**

2. I **accept** the Report and Recommendation without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Williams' recommendation:

    a. The Commissioner's determination that Epting was not disabled is **affirmed**; and

    b. Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 25th day of October, 2017.

_____
Leonard T. Strand, Chief Judge